UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:06cv-25-R

PAMELA BRIGHT,
PLAINTIFF

v.

RELIANCE STANDARD LIFE INSURANCE CO.,
DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment filed by the Plaintiff, Pamela Bright ("Bright") (Docket #14) and the Defendant, Reliance Standard Life Insurance Co. ("Reliance") (Docket #13), respectively. Both parties have responded (Dockets #16 & #17). This matter is now ripe for adjudication. For the following reasons, the Plaintiff's Motion for Summary Judgment is **DENIED**, and the Defendant's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

On February 25, 2003, Bright, while at work as a store manager of a service station in Taylor County, Kentucky, fell from a ladder she was descending, striking her back and buttocks. Bright was transported to the hospital and was proscribed pain medication and muscle relaxers. After her injury, she began see Doctors Jeff Roberts, D.C. ("Dr. Roberts") and Gregory Nazar, M.D. ("Dr. Nazar"). Bright was insured by Reliance, under a plan governed by the Employee Retirement Income Security Act ("ERISA"). Following her accident the Plaintiff submitted an application for benefits claiming disability from performing her "regular occupation." Under the Reliance Group Long Term Disability Policy ("Policy") obtained by Bright, if a claimant is

totally disabled from his/her regular occupation, he/she will receive benefits payable for the first twenty-four (24) months.  After the first twenty-four (24) months, a claimant must be unable to perform the duties of "any occupation," not only his/her regular occupation.  Reliance began to pay the Plaintiff benefits after her injury.  Reliance serves in a dual role as both the insurer of the Policy making payments to claimants as well as the decision maker on who receives coverage.

On March 1, 2003, Dr. Roberts evaluated Bright for the first time, and he stated in his report that "[h]er pain radiates into the left lateral and posterior calk and to the medial foot.  She rates her pain as a '9' on the Borg scale and her function at 15%."  On March 17, 2003, an MRI was performed on Bright that noted: the condition of her soft tissues had not improved; there was a narrowing of disc space in her lower back; and disc displacement at the midline.  These results were confirmed by Dr. Nazar in April and May 2003.  On July 7, 2003, Dr. Roberts diagnosed Bright with a lumbar disc disorder.  Dr. Roberts stated "[t]his patient's prognosis is poor.  She will likely experience physical disabilities and neurological deficits as the result of her condition.  The duration of her condition is indefinite."  That same day Dr. Roberts also performed an assessment of Bright's residual functional ability to perform work related activities.  Dr. Roberts stated that since the accident in February 2003 Bright had been "resistant to treatment with no relief being the result of any treatments post 2-25-03."  In addition, Dr. Roberts indicated that the Plaintiff could sit for only two (2) hours; stand for ten (10) minutes; and could not lift or carry any items.

Two weeks later, on July 21, 2003, Dr. Roberts received the first physical capabilities questionnaire from Reliance to reflect what Bright could do in an eight (8) hour workday.  On the sheet, Dr. Roberts marked that at that time, Bright could not: walk; bend at the waist; squat at

the knees; climb stairs; climb ladders; kneel; and crawl.  As to occasional use, 33% or less, Dr. Roberts concluded that Bright could: reach above and below her shoulder; use foot controls; and drive.  He stated that Bright could continuously sit 67%-100% of the time.  Lastly, Dr. Roberts selected the lowest option as to the amount the Plaintiff could lift, which states "Sedentary Lift - Exerting up to 10 pounds of force, occasionally, and/or a negligible amount of force frequently."

On April 16, 2004, the Reliance claim agent assigned to Bright's case, Terri Barber, made a note in Bright's file that Bright had "NO VOC POTENTIAL."  In May 2004, Dr. Roberts once again examined Bright to check on her status.  He again stated that "[t]he patient is not expected to show additional improvement.  The condition is chronic and permanent."  On the Reliance questionnaire filled out by Dr. Roberts on August 31, 2004, he noted that Bright's ability to sit had declined from 67%-100% continuously, to 34-66% frequently, in an eight (8) hour work day.  The next day, Dr. Roberts concluded that Bright could only occasionally reach above her mid chest and/or push and pull, 33% percent of the time or less in a workday.  In an employability analysis, Reliance incorporated Dr. Roberts' conclusions regarding Bright in October 2004.

In December 2003, Bright, upon the requirement of Reliance, signed a reimbursement agreement with Reliance indicating that Bright would file for Social Security benefits and reimburse Reliance any benefits received if she qualified for other benefit programs, including Social Security disability benefits.  The agreement also required Bright to send Reliance any copies of replies she received from the Social Security Administration ("SSA") and mandated that Bright appeal if she was denied SSA benefits.  That same month, the SSA approved that Bright receive monthly Social Security benefits concluding that she was totally disabled under

SSA standards. Two (2) months after Bright qualified for SSA benefits, Reliance sent Bright a letter asking her to repay outstanding overpayments Reliance had made to Bright in light of her receiving SSA benefits.

On February 23, 2005, Reliance informed Bright via letter that her claim for long term disability benefits was denied, and that the benefits she was then receiving would expire after twenty-four (24) months because Reliance determined that Bright could perform sedentary duties, and therefore, did not meet the definition of "total disability" under the Policy. Reliance indicated that Bright could work certain jobs despite her condition, including positions as a: supervisor; order taker; food and beverage controller; cashier; and audit machine operator. The letter also stipulated that Bright could appeal the decision if she believed they had reached it in error.

Reliance reached these conclusions based on the medical reports from Dr. Roberts and a Residual Employability Analysis ("REA") performed by a member of Reliance's vocational staff. In the letter, Reliance Claims Examiner Terri Barber ("Barber") informed Bright that sedentary was defined as:

> Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or negligible amount of force frequently (Frequently: activity or condition exits from 1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary of walking and standing is required only occasionally and all other sedentary criteria are met.

The last questionnaire issued by Dr. Roberts that Reliance bases its decision to deny long term coverage to Bright states that Bright could frequently (34%-66% of the time) sit and use foot controls; occasionally (33% or less of the time) stand, walk, squat, climb stairs and drive; and never bend at the waist, climb ladder, kneel or crawl. Dr. Roberts checked the lowest

4

exertional level box offered by Reliance, indicating that the Plaintiff could "occasionally" exert ten pounds of force, and/or a negligible amount of force frequently.

In addition to the questionnaire, in early August 2004, Dr. Roberts assessed Bright's condition through an office visit. He noted that Bright's lumbar flexion and extension could only be done with pain, and that Bright was below normal in as far as her range of motion in those areas; 10% with lumbar flexion, and 5% with lumbar extension, respectively. Further, Bright experienced pain when she used her left lateral extension. Dr. Roberts ultimately concluded that Bright had a disc disorder in her lumbar region, she was experiencing an acute flare-up, and that her condition was chronic.

After receiving her denial of long term benefits, Bright claims that her attorney sent a letter to Reliance on June 17, 2005 asking it for all materials relevant to its decision to terminate Bright's benefits, pursuant to 29 CFR §2560.503-1(i)(5). Reliance claims that it never received the letter on June 17, 2005. However, Bright's attorney faxed the same letter to Reliance on December 6, 2005. Reliance received the fax, and informed Bright's attorney that Bright herself needed to sign a release in order to receive that information. After that correspondence, Bright brought the instant action against the Defendant.

The Plaintiff contends that she is entitled to long term disability benefits under the plan because Reliance did not provide specific reasons indicating why it denied her coverage. Further, the Plaintiff asserts that Reliance failed to take the entire medical history of Bright into consideration when reaching its decision as well as the determination by the SSA, and thus acted arbitrarily and capriciously. Alternatively, Bright argues that because Reliance failed to comply with 29 CFR §1133 by not providing Bright with the documents it used in making its decision,

she is entitled to a full and fair review of her claim.  The Defendant counters that Bright failed to exhaust her administrative remedies by not appealing its decision as mandated by ERISA.  Further, Reliance denies that it acted arbitrarily and capriciously when it made its determination.  Lastly, Reliance argues that Bright needed to get a signed release to it before it could turn over the materials related to her case.

## STANDARD

In *Wilkins v. Baptist Healthcare Systems, Inc.*, the Sixth Circuit held that § 502(a) actions were not subject to Federal Rule of Civil Procedure 56 motions.  150 F.3d 609, 617 (6th Cir. 1998).  Instead, this Court must conduct a *de novo* review based on the administrative record; it must render findings of fact and conclusions of law, *id.* at 619, unless the benefit plan gives the administrator discretion to determine eligibility or construe the plan's terms, in which case an arbitrary and capricious standard applies.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Here, the Policy grants its administrators such discretion.  Accordingly, the Court shall apply an arbitrary and capricious standard of review.

When applying an arbitrary and capricious standard of review, this Court must determine whether "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome."  *Bartling v. Fruehauf Corp.*, 29 F.3d 1062,1071 (6th Cir. 1994) (citing *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). If such an explanation is available, this Court must respect the decision of the claims administrator and uphold it.  *Id.* In evaluating those decisions, this Court must consider only the evidence before the administrator at the time, *Daniel v. Eaton Corp.*, 839 F.2d 263, 266-67 (6th Cir. 1988), and must account for potential conflicts of interest.  *Kulkarni v. Metropolitan Life Ins. Co.*, 187 F. Supp.2d

724, 727 (W.D. Ky. 2001) (citing *Firestone Tire and Rubber Co., v. Bruch*, 489 U.S. 101, 115 (1989); *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998)).

## DISCUSSION

There are several issues addressed by the parties in their respected motions for summary judgment. The Court must first determine whether the Policy, as interpreted by the Defendant, applies to the Plaintiff in regards to the definition of "total disability" and "any occupation" after the initial twenty-four month period. The Court must then address the argument by the Defendant that Bright has not exhausted her administrative remedies as required by ERISA.

### 1. Policy Definitions of "Total Disability" and "Any Occupation"

In pertinent part, the Policy defines "total disability," for purposes of the first twenty-four (24) months, which the claimant receives monthly benefits, when "an insured cannot perform the material duties of his/her regular occupation." After monthly benefits have been paid for the first twenty-four (24) months, Reliance then re-evaluates the claim in order to determine whether the claimant can perform "any occupation." For purposes of the Policy, any occupation is defined as "one that the Insured's education, training or experience will reasonably allow." If a claimant cannot perform any occupation on a full-time basis, then the insured would still qualify as totally disabled, and would continue to receive monthly benefits. However, if the claimant can perform the material duties of any occupation, not limited to her previous position, on a full-time basis, than she will not qualify for long term benefits because she would not be disabled under the Policy. Thus, a claimant may not be able to perform the material duties of her previous position, yet not qualify for long term benefits after twenty-four (24) months if Reliance determines that the claimant can perform any occupation on a full-time basis.

Here, the Plaintiff asserts that Reliance has not abided by the Policy because Reliance admits that after two (2) years Bright still cannot perform the material duties of her prior occupation on a full-time basis. However, as stated *supra*, this determination does not mean that Bright cannot perform "any occupation" as defined under the Policy because Reliance may still decide whether a claimant, including Bright, can perform another occupation after two years, not only the previous position. Accordingly, Reliance did not err when it interpreted the terms for "total disability" and "any occupation" under the Policy.

### 2. Exhaustion of Administrative Remedies under ERISA

The Defendant contends that the Plaintiff's claim should fail because the Plaintiff did not exhaust her administrative remedies in appealing the decision by Reliance as required by ERISA. Courts have "sound discretion" in determining whether a claimant should have exhausted his/her administrative remedies under ERISA before bringing suit in federal court. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998); *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir.1994); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453-54 (6th Cir.1991). A majority of federal circuits, including the Sixth Circuit, require an exhaustion of administrative remedies based on ERISA § 503, 29 U.S.C. § 1133, before a claimant can bring suit in federal court. *Fallick*, 162 F.3d at 418. The Court, in *Miller v. Metropolitan Life Ins. Co.*, held that "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991). Though the administrative exhaustion requirement applies as a matter of judicial doctrine, an exception to this rule exists, where a claimant need not exhaust his/her remedies if such an exhaustion would be futile. *Constantino* at 974; *Fallick* at 419. In

order to prove futility, a plaintiff must show that "'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'" *Fallick* at 419; *see Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504-05 (6th Cir. 2004).

Here, the Plaintiff has not addressed the futility issue in its motion for summary judgment or its response to the Defendant's motion for summary judgment, and therefore, has not met its burden as required under the standard applied by the Court in *Fallick* and *Coomer*. *Fallack* at 419; *Coomer* at 505. In its February 23, 2005 letter to Bright, Reliance outlined the appeals process for the Plaintiff, including who the Plaintiff should write her appeal to, as well as the time line for appealing. In addition, that same letter explicitly informs Bright that "[y]our failure to request review within the 180 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under [ERISA], and may affect your ability to bring a civil action under the Act." As such, the Plaintiff failed to exhaust her administrative remedies under ERISA before filing her claim in this Court.

In a similar case, the Sixth Circuit Court of Appeals, in *Garst v. Wal-Mart Stores, Inc.*, found that a plaintiff-claimant failed to exhaust her administrative remedies once she was informed that her long term disability benefits were terminated because she was no longer disabled as defined by the insurance plan, and failed to administratively appeal the decision by the provider. *Garst v. Wal-Mart Stores, Inc.*, 30 Fed. Appx. 585, 592-93 (6th Cir. 2002). In *Garst*, the Court, in addressing the individual claim of one of the claimants who was denied long term benefits, noted that she received notice of the termination of her benefits on November 1, 1997. *Id.* at 593. The letter also informed her of the process to appeal her decision. *Id.* One (1) year later counsel for the plaintiff-claimant wrote the insurance provider requesting the file and

materials used concerning the denial of benefits. *Id.* The provider informed counsel that it could not release the information without a signed authorization from the claimant herself authorizing the release. *Id.* In February 1999, the plaintiff wrote to the provider and asked for an explanation as to why her benefits were denied and authorizing the provider to give her file to her attorney; the insurance provider transmitted the request to her attorney. *Id.* At that point, the plaintiff did not appeal her claim or pursue that path any further, but instead brought suit under ERISA in federal court. *Id.*

The plaintiff argued that pursuing an appeal of the decision would have been futile because a successful claim would only result in a few benefits a month, and not the complete benefits she sought. *Id.* The Court ultimately determined that the plaintiff failed to exhaust her administrative remedies because she did not show how or why her appeal would have been futile. *Id.* In addition, the Court explained that because the time allotted to the Plaintiff to appeal the decision had expired, her claim was not subject to judicial review as she failed to comply with the reasonable time constraint of sixty (60) days to appeal the termination decision. *Id.* The Court upheld the decision by the district court to dismiss the case. *Id.*

Similar to *Garst*, Bright did not exhaust her administrative remedies after she was informed of the termination of her long term benefits. While *Garst* is an unpublished Sixth Circuit decision, it appears to be very similar to the case at hand. In addition, *Garst* is consistent with Sixth Circuit precedent that the exhaustion of administrative remedies is a prerequisite to commence a suit under ERISA. *See Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir. 1991); *see also Welsh v. Wachovia Corp.*, 2006 WL 1972108, *12 (6th Cir. 2006) (*quoting Ravencraft v. UNUM Life Ins. Co.*, 212 F.3d 341, 343 (6th Cir.2000)) (stating that "review or

exhaustion enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions").

The Plaintiff, in her response, asserts that the failure of the Defendant to provide an appropriate termination letter to Bright as well as send her the file when her counsel requested it violates ERISA, 29 U.S.C. § 1133(1), and therefore, shows that Bright exhausted her administrative remedies because of the procedural error by the Defendant. The Plaintiff cites the Sixth Circuit case of *VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992) in support of her argument. However, the Court in *VanderKlok* did not explicitly address the argument raised by the Plaintiff regarding the exhaustion of administrative remedies, but instead addressed the legal effect of the termination letter sent by the insurance group to the claimant. *VanderKlok*, 956 F.2d at 616-7. Further, the Court reached its decision that the letter issued to the claimant from the defendant-provider was defective under ERISA because it failed to inform the claimant as to why the benefits were denied and did not properly explain the review process to the claimant. *Id.*

Here, in contrast to *VanderKlok*, the letter sent by Reliance to Bright not only explains the reasons why the Defendant terminated her long term benefits, but also explains, in detail, the appeals process and advises the Plaintiff to appeal in order to save a potential claim under ERISA. In addition, the fact that Reliance required an signed authorization from Bright in order for it to send her file to her counsel does not violate ERISA's procedural process. *See Garst* at 593. As such, there was no procedural error by Reliance when it issued the termination letter to Bright on February 23, 2005.

Accordingly, the Plaintiff's claim against the Defendant is dismissed as a matter of law because the Plaintiff failed to exhaust her administrative remedies. The Court does not need to address the merits of the case. The Plaintiff failed to exhaust her administrative remedies, and the time do so has expired, as the February 23, 2005 letter informed the Plaintiff that she had 180 days after termination on July 26, 2005 to file an appeal; because the Plaintiff failed to comply with the reasonable time constraint to file a review as stated in the letter, the Defendant's motion for summary judgment is granted. *See Garst* at 593. Therefore, the Plaintiff's claim against the Defendant is dismissed.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED** and the Plaintiff's Motion for Summary Judgment is **DENIED**. The Plaintiff's claims against the Defendant are hereby **DISMISSED**.

An appropriate order shall issue.